UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTHONY WOODS                                         CIVIL ACTION

VERSUS                                                NO: 10-2609

LOUISIANA STATE UNIVERSITY, ET                        SECTION: "A" (1)
AL

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 42)** filed by Defendants Louisiana State University Health Science Center and Medical Center of Louisiana at New Orleans, et al. Plaintiff Anthony Woods opposes the motion. The motion was submitted for hearing on the briefs on December 7, 2011, without oral argument. For the reasons that follow, the motion is GRANTED.

I.     **BACKGROUND**

Plaintiff Anthony Woods was formerly employed by the Louisiana State University Health Sciences Center in New Orleans ("LSUHSC") in the Maintenance department with permanent status. Plaintiff was terminated from this position effective August 27, 2009, and filed the instant suit on August 10, 2010, claiming that his firing constituted a violation of 42 U.S.C. §1983, §1985, and §1986, as well as Louisiana Civil Code article 2315. Plaintiff seeks back pay, reinstatement, and punitive damages.

Plaintiff was terminated based on alleged violations of LSU's Health Care Services Division policy. Under the policy, employees requesting leave without sufficient advance notice given are considered to be on "unscheduled leave." Employees who fail to report to work, fail to

1

call in, or leave work without approval are considered to be on unauthorized leave. Any unauthorized absences are expected to be minimal, and any non-compliance with the policy will "subject an employee to disciplinary measures as determined by the policy of each facility."

According to Plaintiff's facility's policy, employees who are unable to work for their assigned shift must speak to their department director or other person designated by the department director (in Plaintiff's case, the foreman) to request unscheduled leave. If the foreman cannot be reached, employees can then contact their ultimate supervisor. The policy specifically states that employees must personally speak to their department director or the director's designee unless physically unable to do so, and that having someone call-in on an employee's behalf is "not acceptable and does not constitute a request for unscheduled leave."

Plaintiff's immediate supervisor was originally foreman Lloyd Gibson, who was later replaced by Michael Braud. Plaintiff's ultimate supervisor within the department was Facility Manager Walter Radosta. Under the policy, therefore, employees in Maintenance must first contact the foreman (formerly Mr. Gibson and now Mr. Braud) regarding all leave issues. If the foreman cannot be reached, employees should then call Mr. Radosta.

In Mr. Radosta's sworn testimony, he explains that the reason for this policy is that if one worker unexpectedly takes leave, another must be called to fill his shift. Only supervisors are authorized to call workers to substitute for another employee who has taken leave. Mr. Radosta testified that it is common courtesy for the worker taking leave to call his co-workers to inform them that he will be absent; however, Mr. Radosta stated that this courtesy call to fellow shift employees is not an adequate substitute for the authorization required by the policy. An employee must obtain leave from his supervisor, not other lead workers on his shift, in order to

satisfy the policy.

Those employees who do not report to work as scheduled, do not speak to the department director or other person designated by the department director to receive approval for emergency leave, or who leave their post of duty prior to the end of the scheduled shift are subject to three increasing levels of discipline: 1) a written letter of reprimand; 2) three-day suspension without pay; and finally 3) termination. Defendant has presented evidence that plaintiff was subject to all three levels of discipline.

The parties have conducted written discovery, and Defendants have deposed Plaintiff. Defendants now move for summary judgment arguing that there are no genuine issues of material fact and that Plaintiff's case should be dismissed.

## II.  STANDARD OF REVIEW

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). When the moving party does not bear the ultimate burden of persuasion on the claim at issue, it may meet its burden of production by offering affirmative evidence in the form of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials proving that the non-moving party cannot show a genuine issue of material fact. Fed.R.Civ.P. 56(c)(1)(a). If the moving party carries its burden of production under Rule 56, the burden shifts to the non-moving party to show that there is a genuine dispute as to material fact for trial, either by pointing to or rehabilitating evidence already in the record, or by offering new evidence. Celotex v. Catrett, 477 U.S. 317, 332–33,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1988).

A genuine dispute for trial exists when a rational trier of fact looking at the record could find for the nonmoving party. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Co., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir.1996) (citations omitted). Though the Court must view the evidence in the light most favorable to the non-moving party, the factual context of the claim is important in determining whether a rational trier of fact could find for the nonmoving party. Matsushita Elec. Industrial Co., 475 U.S. at 588. If the non-moving party makes an evidentiary showing of a genuine issue of material fact, then the burden shifts again to the moving party to show the inadequacy of this evidence. Celotex, 477 U.S. at 332. However, if the non-moving party does not carry its burden, the court shall enter summary judgment against them. Fed.R.Civ.P. 56(a).

## III. DISCUSSION

In his opposition to the motion for summary judgment, Plaintiff argues that a genuine issue of material fact exists because Plaintiff was terminated by the state in the absence of the required due process hearing, thereby precluding him from providing evidence of following the standard employee leave procedures. He further argues that a genuine issue of material fact exists because similarly situated employees at Mr. Woods' place of employment used the same leave process as Plaintiff without adverse consequences. The Court addresses each of these claims in turn.

### A. Lack of Due Process

Plaintiff seeks relief from Defendants' alleged due process violation under 42 U.S.C. § 1983. Section 1983 provides a remedy for violations of federal law when the defendant is acting

under "color of any statute, regulation, custom, or usage, of any State...." 42 U.S.C. §1983 (2010).

Procedural due process claims require a two-part analysis. The Court must determine: 1) whether plaintiff has a liberty or property interest whose deprivation requires that he be afforded due process; and 2) if plaintiff does have such an interest, what process is due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Apparently, neither party disputes that as an employee of LSUHSC with permanent status, Plaintiff had a property interest in his continued employment. Accordingly, the only question is whether Plaintiff was afforded all process that he was due.

At its core, due process requires notice of the charges brought against the plaintiff and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). However, due process is "flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 903 (1997). Following the principle that due process is a flexible concept, in Cleveland Board of Education v. Loudermill, the Supreme Court held that a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as opposed to a full pre-termination adversarial hearing. 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Pointing out that the plaintiff was entitled to a full post-termination administrative hearing, the Loudermill Court explained that a pre-termination hearing does not need to be elaborate:

> ... the pre-termination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Id. at 545–46.

The Court further explained that "an informal hearing which allows the employee to give his version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process...." Loudermill, 470 U.S. at 546.

The Fifth Circuit applied Loudermill's holding in Browning v. City of Odessa, Texas, 990 F.2d 842, 844 (5th Cir.1993). In Browning, a firefighter who had been disciplined numerous times for insubordination, conduct unbecoming of a firefighter, and failure to follow orders was terminated after a thirty-minute meeting with his superior officer. Browning, 990 F.2d at 843. Plaintiff's termination was stayed after the City's personnel manager insisted on a more formal pre-termination hearing. Id. at 843. The Fifth Circuit held that the first (informal) hearing between plaintiff and his supervisor satisfied due process even though it only lasted thirty minutes, because plaintiff was given notice of his possible termination, the reasons he was being terminated, an opportunity to respond, and he could avail himself of elaborate post-termination procedural safeguards. Id. at 844–45. The Court held that the notice of the charges against Browning given to him at his pre-termination meeting, after he had been suspended four times without pay, satisfied the constitutional minimum required by Due Process. Id. at 843

Considering this controlling precedent, the Court rejects Plaintiff's claims that he did not receive adequate notice or an opportunity to be heard before he was terminated. Plaintiff argues that his due process rights were violated because he was not granted an adequate pre-termination hearing before his discharge on August 27, 2009. However, Defendants presented evidence that Plaintiff was formally disciplined for his failure to properly request leave from work on two separate occasions before his termination, and was then presented with a letter of termination and the opportunity to meet with the Chief Administrative Officer and Physical Plant Manager to

discuss the reasons for his discharge.  The sequence of events leading up to Mr. Woods' termination is as follows.

On January 30, 2008, Plaintiff received a letter of reprimand for an unauthorized absence from his post.  The letter was signed by Plaintiff, Mr. Gibson, and Mr. Radosta, as well as by Director of Facilities Robert Arnold and Chief Administrative Officer Adler Voltaire.  According to the letter, Plaintiff was "no call no show" for six eight-hour work periods between the dates of January 6 and January 13, 2008.  The letter cites the facility policy, which states that "unauthorized absence from place/post of duty includes the absence from post of duty/work station without authorization."  The letter also states that further violations will yield more severe forms of disciplinary action.  Plaintiff did not file a written response to this letter at the time he received it, and his opposition to the motion for summary judgment does not address the absences reported in the letter.

On February 27, 2009, Plaintiff received a three-day suspension, again for unauthorized absence.  Plaintiff appealed his suspension, but his appeal was dismissed as untimely filed.  Plaintiff asserts that he followed "the common practice of the maintenance department" in calling Michael Hutton, who was a "lead worker" and a fellow "Maintenance Repair Master" in the department.  Plaintiff states that Mr. Hutton recorded his absence in the logbook maintained on site.

According to Defendants, the term "lead worker" indicates that Mr. Hutton had more work experience than Plaintiff, not that he was Plaintiff's supervisor.  Defendants do not contradict Plaintiff's assertion that he contacted Mr. Hutton, but counter that Plaintiff violated LSUHSC policy because Mr. Hutton was not the proper person from whom to request leave.

7

According to LSUHSC, Mr. Hutton was not a supervisor, did not keep a time sheet, did not perform performance planning reviews, and was not authorized to grant or deny leave requests. In order to properly request leave, Plaintiff should have contacted Mr. Braud, the foreman at that time and his immediate supervisor.  If he could not reach Mr. Braud, Plaintiff should then have called Mr. Radosta, the facility manager.

Mr. Hutton's deposition testimony confirms that Plaintiff called him on February 19, 20, and 21 to say that he would not be able to report for work due to illness in the family.  Mr. Hutton, like Mr. Woods, states that it was "the common practice of the maintenance department" to call him when requesting leave, and that he attempted to contact his supervisor, Mr. Braud, to inform him of Plaintiff's absence but could not reach Mr. Braud by telephone.  Again, Defendant does not contradict Plaintiff's assertion that he contacted Mr. Hutton regarding his absence, but points to LSUHSC policy in asserting that Mr. Hutton was not the appropriate person from whom to request leave.  Per the policy, Plaintiff should have personally requested leave from Mr. Braud, or in the alternative, from Mr. Radosta.

Plaintiff's final unauthorized absences occurred on July 22 and 23, 2009.  On July 22, 2009, Plaintiff reported for work.  However, about thirty minutes into his shift, he asked Mr. Hutton for permission to leave the hospital.  The reason for Plaintiff's departure is unclear; in his affidavit he states that he had to go home quickly due to his wife's medical emergency.  However, in other parts of the record, including a handwritten letter by Plaintiff, he says that he left work in order to move his truck.  Plaintiff admits in his deposition that he did not request permission from Mr. Braud or Mr. Radosta and did not clock out upon his departure.

While he was absent from work, Plaintiff was pulled over by the police and arrested

based on an outstanding traffic warrant.  In the letter of termination issued to Plaintiff on August 19, 2009, Mr. Radosta states that Plaintiff, who was arrested 1.08 miles from the hospital, did not "just move [his] truck but...went on a personal errand."

Plaintiff was supposed to report for work the next day, July 23, 2009, at 3:00 p.m.  However, according to Plaintiff, he was unable to report for work on time because he remained incarcerated.  Defendants allege, and Plaintiff does not deny, that Plaintiff arrived for work at 7:04 p.m., four hours late for his shift.  At this point, Plaintiff had been disciplined for the same failure to notify a supervisor on previous occasions and should have been aware that Mr. Hutton was not the proper person to call in the event of an unanticipated absence.  However, again, Plaintiff did not call either Mr. Braud or Mr. Radosta to say that he would be late.  Instead, according to Mr. Hutton, Plaintiff instead called Mr. Hutton to say that he would be late.

Plaintiff returned to work on July 24, 2009, and received his letter of termination on August 19, 2009.  The letter stated that he was being dismissed effective August 27, 2009 for "unauthorized absence" from work.  Plaintiff subsequently had a meeting with Adler Voltaire, the Chief Administrative Officer, and James Ford, the Physical Plant Manager, to discuss the reasons for his termination.  The Court finds that, under Fifth Circuit precedent, this meeting constituted an informal hearing of the type that the Supreme Court in <u>Loudermill</u> and the Fifth Circuit in <u>Browning</u> found sufficient to satisfy due process.

Plaintiff further exercised his right to appeal his termination to the Louisiana Civil Service Commission on September 17, 2009.  Plaintiff, Mr. Hutton, Mr. Braud, and Mr. Radosta testified at the public hearing, which was held November 12, 2009, in New Orleans, Louisiana.  In the decision of the Civil Service Commission, which was filed January 11, 2010, the Referee

discussed the events of July 22 and 23, 2009.  He concluded that Plaintiff did inform Mr. Hutton, who was the only other person working at the time, of his intended departure, but that Mr. Hutton did not have the authority to authorize Plaintiff to leave the hospital during their shift. He further concluded, based on Plaintiff's admission, that Plaintiff did not contact Mr. Braud or Mr. Radosta to inform them of his departure on July 22 or that he would be late on July 23 due to his incarceration.  The Referee ultimately denied Plaintiff's appeal, finding that LSUHSC had proved legal cause for discipline and that Plaintiff's dismissal was commensurate with his dereliction of duty.

      Based on the above, the Court finds that Defendant movants have met their burden of demonstrating that there is an absence of evidence to support the non-moving party's claims.  See Celotex, 477 U.S. at 325.  Plaintiff, the non-movant, has not come forward with "specific facts" showing a genuine factual issue for trial.  See Id. (citing Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  Plaintiff alleges that he was fired without being given an opportunity to respond to allegations of disciplinary infractions.  However, the record reveals that Defendants followed their own "progressive discipline policy" to the letter in terminating Plaintiff, and that Plaintiff was afforded adequate due process.  Mr. Woods received two written warnings before his termination, requested and attended a meeting with the Chief Adminstrative Officer and the Physical Plant Manager after receiving his notice of termination, and exercised his right to appeal his termination before the Civil Service Commission.  The Court concludes, based on these facts, that Plaintiff was not denied due process and that his associated claims are without merit and must be dismissed.

      **B.**    **Different treatment of similarly situated employees**

Plaintiff further fails to identify any person who violated LSUHSC policy and was not reprimanded as a result. Plaintiff's opposition to the motion for summary judgment alleges that on April 28, 2009, Mr. Michael Cooper, an individual employed in the Maintenance department, called Mr. Hutton to inform him that he would not be able to come in for his shift. According to Plaintiff, Mr. Cooper was not disciplined, despite the fact that he called Mr. Hutton and not Mr. Braud or Mr. Radosta.

However, Plaintiff does not provide any evidence that Mr. Cooper was in fact "similarly situated." For instance, nowhere in the record does it state that, at the time of his alleged policy violation, Mr. Cooper was at the third stage of the progressive discipline policy, that he failed to clock out after the beginning of a shift when he left work on a personal errand, or that he failed to call Mr. Braud or Mr. Radosta in addition to informing Mr. Hutton that he would not be coming to work. The Court does not find any compelling support in the record for Plaintiff's assertion that he and Mr. Cooper are similarly situated individuals who were treated differently by Defendants. Plaintiff's claims hinging on this alleged differential treatment must therefore be dismissed.

The Court finds that no rational trier of fact looking at the record could find for Plaintiff. In sum, Defendants are entitled to judgment as a matter of law.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 41)** filed by defendant LSUHSC et al. is **GRANTED**. Plaintiff's claims against defendant LSUHSC et al. are **DISMISSED** with prejudice.

This 13th of January, 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE